# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 3, 2024

Lyle W. Cayce
Clerk

―――――――――

No. 23-60368

―――――――――

Willie Pole,

*Plaintiff—Appellant*,

*versus*

James K. Shearer, *in his Individual and Official Capacity as an officer or employee of the Federal Bureau of Investigation*,

*Defendant—Appellee*.

―――――――――――――――――――――――――――

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:22-CV-182

―――――――――――――――――――――――――――

Before Elrod, Duncan, and Ramirez, *Circuit Judges*.

Per Curiam:[*]

After agents with the Federal Bureau of Investigations raided his home, Willie Pole sued James Shearer, an FBI supervisor in federal district court. The clerk of court later entered default against Shearer. The district court then set aside Shearer's entry of default and dismissed Pole's claims against Shearer. On appeal, Pole contends that he properly stated a claim for

―――――――――――――――――――

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

relief under *Bivens v. Six Unknown Named Agents* and that the district court erred in setting aside the entry of default. Because Pole failed to state a claim upon which relief could be granted under *Bivens*, and because the district court did not err in setting aside Shearer's entry of default, we AFFIRM.

I

Around 6:30 a.m. on April 4, 2019, Willie Pole heard a knock at the door to his home in Greenville, Mississippi. Wearing only a towel, he went to the door to investigate. When he asked who was at the door, no one responded, and he said that he needed to put on clothes. At that point, several agents with the Federal Bureau of Investigation burst through Pole's door and yelled "put your hands up and drop everything you got." Pole dropped his towel to comply with the order. The agents did not show Pole a search warrant or otherwise indicate that they were members of law enforcement.

Pole alleges that at least one of the agents grabbed his arm and took him outside while he was still unclothed. The agents ordered him to keep his hands up while they pointed assault-style weapons at him. Two officers went into his home, found his work badge, and came back outside. Pole was then ordered into the home. When Pole asked the individuals who they were, an agent allegedly grabbed Pole's arm and twisted it. When Pole attempted to withdraw from the agent's grip, an individual with an "assault style type weapon" stated that Pole was "making it worse." Later, an agent told Pole to sit down, identified himself as an officer from the FBI, and gave Pole a blanket to cover up. According to Pole's complaint, the agent then explained that he had reason to believe that a drug dealer was staying in Pole's home

and "apologized for what [had] happened" to Pole.[1]  Pole also alleges that Defendant James Shearer, an FBI supervisor, was present at the scene.

In April 2022, Pole sued Shearer and several John Does in federal court in both their individual and official capacities.  Pole asserted claims under 42 U.S.C. § 1983 for violation of his constitutional rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments, and several tort claims under the Federal Tort Claims Act.

Shearer filed a motion to dismiss, arguing insufficient service of process, lack of subject-matter jurisdiction, and failure to state a claim. Instead of responding to Shearer's motion, Pole filed an amended complaint, which added factual allegations.  Later, Pole filed an application with the clerk of court requesting an entry of default against Shearer, which the clerk entered the following day.

After the clerk entered default against him, Shearer moved to dismiss Pole's amended complaint.  He also responded to the motion for entry of default.  Per the Clerk's instruction, Shearer then moved to set aside the clerk's entry of default.

The district court ordered Pole to respond to Shearer's motion to dismiss the amended complaint.  Pole complied and also moved to strike Shearer's motion to dismiss.

The district court then granted Shearer's (1) motion to dismiss and (2) motion to set aside the entry of default.  The district court dismissed Pole's constitutional and tort claims against Shearer in his official capacity

---

[1] The record does not provide any further explanation for why the agents searched Pole's home.  At oral argument, counsel for Shearer explained that the FBI agents had a warrant for Pole's home because they had reason to believe that an individual associated with several drug transactions was staying there.

without prejudice for lack of subject matter jurisdiction. It also dismissed Pole's constitutional claims against Shearer in his individual capacity with prejudice for failure to state a claim.

## II

Pole appeals, pressing four arguments. First, Pole argues that his amended complaint pleads a proper *Bivens* claim for recovery under the Fourth Amendment. Second, Pole argues that he should not have been ordered to respond to the motion to dismiss before the court set aside Shearer's entry of default. Third, Pole argues that the court erred in setting aside the entry of default. And fourth, Pole argues that Shearer was properly served.

## A

Pole appeals the district court's order dismissing his Fourth Amendment claim against Shearer in his individual capacity. The district court concluded that Pole failed to state a claim for relief under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). The district court also dismissed Pole's other claims against Shearer, but Pole does not appeal those claims.

A district court's grant of a Rule 12(b)(6) motion to dismiss is reviewed *de novo. Vizaline, L.L.C. v. Tracy*, 949 F.3d 927, 931 (5th Cir. 2020) (citation omitted). The court accepts all well-pleaded facts as true, construing the complaint in the light most favorable to the plaintiff. *Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020). But we "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.* (citation and internal quotation marks omitted).

*Bivens* provides an avenue for relief against federal officers sued in their individual capacity. Whether a plaintiff may proceed under *Bivens*

presents a two-step analysis. "First, do [Pole's] claims fall into one of the three existing *Bivens* actions? Second, if not, should we recognize a new *Bivens* action here?" *Cantú v. Moody*, 933 F.3d 414, 422 (5th Cir. 2019). These inquiries are addressed in turn.

*Bivens* claims are generally limited to the precise circumstances of the three Supreme Court cases that have allowed recovery under *Bivens*. *Oliva v. Nivar*, 973 F.3d 438, 442 (5th Cir. 2020). Apart from these three factual scenarios, "[v]irtually everything else is a 'new context'" for which an extension of *Bivens* is disfavored. *Id.* (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 148 (2017)). "As the Supreme Court has emphasized, our understanding of a new context is broad." *Id.* (internal quotation marks omitted) (quoting *Hernandez v. Mesa*, 589 U.S. 93, 102 (2020)). And a context is "new" if it is "different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court]." *Hernandez*, 589 U.S. at 102 (quoting *Abbasi*, 582 U.S. at 139). The bar for a meaningful difference is exceedingly low. *See Abbasi*, 582 U.S. at 139–40 ("A case might differ in a meaningful way because of the rank of the officers involved[.]").

The parties agree that the only relevant case of the *Bivens* trilogy is *Bivens* itself.[2] In that case, officers from the Federal Bureau of Narcotics entered Bivens's home to execute a warrantless search for narcotics, "manacled" the plaintiff in front of his family and threatened to arrest each of them. *Bivens*, 403 U.S. at 389. Then, the officers took Bivens to a federal courthouse to be "interrogated, booked, and subjected to a visual strip search." *Id.*

_____

[2] The other two *Bivens* cases concern sex discrimination by a congressman against a staff person, *see Davis v. Passman*, 442 U.S. 228 (1979), and failure to provide medical attention to a prisoner with asthma in federal custody, *see Carlson v. Green*, 446 U.S. 14 (1980).

Here, officers did not handcuff Pole in front of his family—indeed, there is no indication that Pole's family was present. *Oliva*, 973 F.3d at 443 (finding a meaningful difference where "officers did not manacle Oliva in front of his family"). Although Pole dropped his towel during the detention and was left naked, that was an accidental by-product of the detention and not a formal strip search. *Id.* (finding a meaningful difference where investigators did not strip search plaintiff). Investigators in *Bivens* searched the plaintiff because he himself was under investigation, 403 U.S. at 389, whereas the agents here mistakenly believed that a drug dealer was residing at Pole's home. And Pole was never removed from his property, whereas Bivens was brought to the federal courthouse to be interrogated. *Id.* To be sure, Pole's complaint provides some salient similarities between his case and *Bivens*; both cases concern narcotics investigations and searches of homes. But because there are several meaningful differences, Pole's claim is a "new context." *Abbasi*, 582 U.S. at 147 ("Yet even a modest extension is still an extension.").

"That leads to the second question: whether to engage in the 'disfavored judicial activity' of recognizing a new *Bivens* action." *Oliva*, 973 F.3d at 443 (quoting *Abbasi*, 582 U.S. at 135). If there are any "special factors" that give the court "reason to pause before applying *Bivens* in a new context or to a new class of defendants," then the court should not extend *Bivens*. *Id.* (quoting *Hernandez*, 589 U.S. at 102).

We agree with the district court's assessment that two special factors counsel against extending *Bivens* here. First, Congress has designed an alternative remedial structure, the Federal Tort Claims Act, under which Pole may proceed. *See Egbert v. Boule*, 596 U.S. 482, 493 (2022) ("[A] court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, 'an alternative remedial structure.'" (citation omitted)). Even if the FTCA does not provide relief for all of Pole's

claims, the FTCA is nonetheless an alternative form of relief.  *Oliva*, 973 F.3d at 444; *cf. Minneci v. Pollard*, 565 U.S. 118, 129 (2012) ("State-law remedies and a potential *Bivens* remedy need not be perfectly congruent.").

Second, the separation of powers is a special factor.  The Supreme Court in *Hernandez v. Mesa* explained that "the most important question" is "who should decide" whether to provide for a damages remedy, "Congress or the courts?"  589 U.S. at 114 (quoting *Abbasi*, 582 U.S. at 135).  "The correct answer most often will be Congress."  *Id.* (citation and internal quotation marks omitted).

Here, Congress elected not to make federal officers statutorily liable for excessive force under the FTCA.  Because excessive force claims are not uncommon, and because Congress has not amended the FTCA to include these claims, the "silence of Congress" is "telling," and the court should respect Congress's prerogative to fashion remedies.  *Abbasi*, 582 U.S. at 143–44 (finding that Congress's failure to amend the FTCA to include a cause of action for poor conditions of confinement was intentional).

In the presence of these special factors, a *Bivens* remedy "will not be available."  *Id.* at 136.  Accordingly, the district court did not err in dismissing Pole's *Bivens* claim.

B

Pole also argues that the district court erred by ordering him to respond to Shearer's motion to dismiss before first setting aside the entry of default because, according to Pole, a defaulting defendant "cannot contest the fact of his liability."  In other words, Pole contends that the district court should have first resolved the motion to set aside the entry of default before allowing Shearer to contest his liability, as opposed to disposing of both motions simultaneously.

When defendants default, they are deemed to admit all well-pleaded facts alleged against them. *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 496 (5th Cir. 2015) (citing *Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). But defaulting defendants do not admit "conclusions of law." *Id.* (citation omitted). Even after default, "it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action . . . ." 10A Charles Alan Wright et al., Federal Practice and Procedure § 2688.1 (4th ed.). Indeed, as we explained in *Nishimatsu*, a defaulting defendant "is entitled to contest the sufficiency of the complaint and its allegations[,]" even though he has admitted the facts alleged against him. 515 F.2d at 1206.

We have also reasoned that when dismissal for *forum non conveniens* is inevitable, a defaulting defendant should not be forced to first set aside an entry of default, and only *then* move to dismiss. *Moreno v. LG Elecs., USA Inc.*, 800 F.3d 692, 699 (5th Cir. 2015). In *Moreno*, the plaintiff did not show prejudice from any procedural error because her claims against the defaulting defendant would be poured out of court whether the defendant first set aside the entry of default or not. *Id.* So too here.

Pole has not suffered any prejudice. Pole had the opportunity to respond to the merits of Shearer's motion to dismiss, and dismissal is a foregone conclusion under the Supreme Court's and this court's *Bivens* precedent. *See supra* Section II.A. The district court would have reached the same conclusion whether it first required Shearer to set aside the entry of default before moving to dismiss or not.[3]

_____

[3] For the same reason, we reject Pole's two remaining arguments: that the district court erred in setting aside the entry of default, and that the district court "should have addressed the service of process matter." Even assuming that the district court erred, Pole

No. 23-60368

We affirm on this ground.

## III

In sum, Pole has failed to state a claim upon which relief could be granted under *Bivens*.  Further, the district court did not err in setting aside Shearer's entry of default while simultaneously granting the motion to dismiss.  Pole's remaining arguments fail because he cannot show prejudice. We AFFIRM.

---

has not been prejudiced because the only claim that he has appealed is foreclosed.  We need not address these arguments.