# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
March 16, 2023

Lyle W. Cayce
Clerk

No. 22-60109

William Jody Cromwell,

*Plaintiff—Appellant*,

*versus*

Boa Vida Hospital of Aberdeen, MS, L.L.C., *doing business as* Monroe Regional Hospital,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 1:20-CV-174

Before Richman, *Chief Judge*, and King and Higginson, *Circuit Judges*.

Per Curiam:*

William Jody Cromwell, a former anesthetist at Boa Vida Hospital (Hospital), alleges that he was terminated solely due to his disabilities in violation of § 504(a) of the Rehabilitation Act of 1973.[1]  The district court granted the Hospital's motion for summary judgment.  Because Cromwell

---

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

[1] *See* 29 U.S.C. § 794(a).

failed to show that the Hospital's nondiscriminatory reasons for his termination were merely pretextual, we affirm.

**I**

Cromwell has been an anesthetist since 1976 and began working for the Hospital in 2014. He has multiple disabilities. First, he acknowledges that he used a walker due to knee pain while working at the Hospital. Second, he has hearing loss and stated that he wears hearing aids.

At the Hospital, Nancy Williams managed the operating room. Although four physicians used the operating room, most of the surgeries and the most complex surgeries were performed by the chief of surgery, Dr. Woodrow Brand. In late 2015, Williams told Chris Chandler, the Hospital's administrator, about Cromwell's mobility struggles. Before the end of 2015, Dr. Brand also brought concerns regarding Cromwell's limited mobility to Chandler.

Chandler testified that Dr. Brand, Williams, and other members of the surgery team raised concerns over the quality of Cromwell's anesthesia services. Both Dr. Brand and an operating room nurse, Dana Thompson, testified that Cromwell appeared to have trouble hearing alarms going off during surgery. Thompson testified that when this happened, she would check on the patients to make sure they were safe. Williams testified that she received questions from patients and their families about Cromwell's inability to hear. Cromwell admits that nurses questioned him about alarms going off, but he claims he was ignoring false alarms.

Chandler testified that Dr. Brand told him three or four times that Cromwell had provided patients with insufficient anesthesia. Further, Dr. Brand, Williams, and Thompson all testified that intubation seemed more difficult for Cromwell than for others in his position.

In November 2017, Cromwell had difficulty intubating a patient. According to Dr. Brand, Cromwell tried to intubate the patient multiple times without success, which caused significant bleeding and endangered the patient. Cromwell testified that the patient had undergone more than twenty surgeries on her face, which made her difficult to intubate. Dr. Brand testified that Cromwell did not discuss the second intubation attempt with him, which was symptomatic of Cromwell's inability to communicate effectively. Williams and Thompson testified that before Dr. Brand could speak to the patient's family about what had occurred, Cromwell spoke to the family, even though the conversation should have been reserved for the treating physician.

Chandler testified that when he heard what had occurred, he launched an investigation into the incident and sought information from the surgery team. Chandler testified that he concluded that Cromwell's intubation difficulty was a concern and that Cromwell had overstepped his role in his conversation with the patient's family. Cromwell admitted that he had difficulty intubating the patient, he spoke with the family of the patient who was difficult to intubate, and there was an investigation into the circumstances surrounding the difficult intubation. However, he did not admit to having done anything wrong.

Chandler testified that, after the investigation, he contacted Dr. Kimjot Singh, the Hospital's owner, who had ultimate authority in employment decisions. Dr. Singh had never met Cromwell. Chandler told Dr. Singh that, over time, the quality of Cromwell's job performance had deteriorated to the point of potential liability. Chandler recommended terminating Cromwell. Before terminating Cromwell, Dr. Singh contacted Dr. Brand, who expressed patient safety concerns regarding Cromwell's job performance. In January 2018, Chandler informed Cromwell that his contract was being terminated. Chandler explained to Cromwell that there

needed to be "a change in the anesthesia department." Cromwell testified that Chandler told him that Williams and Dr. Brand were the individuals who wanted the change.

Cromwell contends that he was fired not because of poor job performance, but rather, because of his disabilities. In support of this claim, he points to the two statements regarding his disabilities that were made by Dr. Brand and Williams. Further, to negate the testimony of Dr. Brand and Williams, five witnesses testified that they did not have any issues with Cromwell's job performance.

The district court granted the Hospital's motion for summary judgment, concluding that Cromwell failed to prove a prima facie case of employment discrimination or, in the alternative, that Cromwell failed to show that the Hospital's justification for his termination was pretextual. Cromwell timely appealed. This court has jurisdiction under 28 U.S.C. § 1291.

## II

Cromwell argues that the district court erred in dismissing his claim for discrimination under the Rehabilitation Act. "The Rehabilitation Act 'prohibits discrimination on the basis of disability by recipients of federal funds.'"[2] Where a plaintiff relies on circumstantial evidence in support of a discrimination claim under the Rehabilitation Act, as is the case here, the

---

[2] *Cohen v. Univ. of Tex. Health Sci. Ctr.*, 557 F. App'x 273, 277 (5th Cir. 2014) (per curiam) (unpublished) (quoting *E.E.O.C. v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 614 n.5 (5th Cir. 2009)).

No. 22-60109

claim is analyzed at summary judgment under the *McDonnell Douglas*[3] burden-shifting framework.[4]

Under this framework, a plaintiff must first establish a prima facie case of discrimination.  "To establish a prima facie case of discrimination under the Rehabilitation Act, 'a plaintiff must prove that (1) she is an "individual with a disability"; (2) who is "otherwise qualified"; (3) who worked for a "program or activity receiving Federal financial assistance"; and (4) that she was discriminated against "solely by reason of her or his disability."'"[5]

If the plaintiff establishes a prima facie case, "the burden shifts to the defendant to 'articulate some legitimate nondiscriminatory reason' for its actions."[6]  To satisfy this burden, the defendant need only produce "any evidence 'which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action. . . .'"[7]

"If the defendant meets his burden . . . , then the burden shifts back to the plaintiff to show that the nondiscriminatory justification was mere pretext for discrimination . . . ."[8]  A plaintiff may demonstrate pretext "by showing

---

[3] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).

[4] *See Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 585 (5th Cir. 2021) (citing *Cohen*, 557 F. App'x at 277).

[5] *Id.* at 586 (quoting *Hileman v. City of Dall.*, 115 F.3d 352, 353 (5th Cir. 1997) (quoting 29 U.S.C. § 794(a))).

[6] *Cohen*, 557 F. App'x at 278 (quoting *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995)).

[7] *Daigle*, 70 F.3d at 396 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) ("This burden is one of production, not persuasion; it 'can involve no credibility assessment.'" (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 509)).

[8] *Cohen*, 557 F. App'x at 278 (citing *Seaman v. CSPH, Inc.*, 179 F.3d 297, 300-01 (5th Cir. 1999)).

No. 22-60109

that the employer's proffered explanation is unworthy of credence."[9] "An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action."[10]

A district court's grant of summary judgment is reviewed de novo.[11] "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law'"[12] and not appropriate if "a reasonable jury could return a verdict for the non-moving party."[13] We view the evidence in the light most favorable to the non-movant.[14] "However, the non-movant must go beyond the pleadings and present specific facts indicating a genuine issue for trial in order to avoid summary judgment."[15] "[T]his court typically will not consider evidence or arguments that were not presented to the district court for its consideration in ruling on the motion."[16]

---

[9] *Reeves*, 530 U.S. at 143 (citation omitted).

[10] *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (citing *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002)).

[11] *See Feist v. La., Dep't of Justice, Off. of the Att'y Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (citation omitted).

[12] *Johnston & Johnston v. Conseco Life Ins. Co.*, 732 F.3d 555, 561 (5th Cir. 2013) (quoting FED. R. CIV. P. 56(a)).

[13] *Bluebonnet Hotel Ventures, L.L.C. v. Wells Fargo Bank, N.A.*, 754 F.3d 272, 276 (5th Cir. 2014) (quoting *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000)).

[14] *Feist*, 730 F.3d at 452 (citation omitted).

[15] *Bluebonnet Hotel Ventures*, 754 F.3d at 276 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

[16] *Grogan v. Kumar*, 873 F.3d 273, 277 (5th Cir. 2017) (internal quotation marks and citations omitted); *see also Davidson v. Fairchild Controls Corp.*, 882 F.3d 180, 185 (5th Cir. 2018) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not

No. 22-60109

We assume—but do not decide—that Cromwell has established a prima facie case of discrimination under the Rehabilitation Act.[17]  Pursuant to the second step of the *McDonnell Douglas* framework, the Hospital has asserted its "legitimate, non-discriminatory reason[s]"[18] for terminating Cromwell's employment, which were Cromwell improperly dosing patients, ignoring alarms, struggling with intubation, and ineffectively communicating.  We therefore consider whether Cromwell can show that the Hospital's purported reasons were pretextual such that a reasonable jury could conclude that his termination was due to his disabilities.  The district court concluded that Cromwell failed to show pretext, and we similarly conclude that none of the evidence upon which Cromwell relies creates an issue of fact as to the Hospital's articulated reasons for terminating his employment.

Although Cromwell denies that he had performance problems, merely disputing the Hospital's assessment of his performance does not create an issue of fact because the issue at the pretext stage is whether the reason for termination was the real reason for termination, not whether the reason was correct.[19]  Moreover, Cromwell admits to many of the underlying events upon which the Hospital claims it based its termination decision, including

---

properly before the district court." (quoting *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003))).

[17] *See Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 582 (5th Cir. 2021); *Cohen v. Univ. of Tex. Health Sci. Ctr.*, 557 F. App'x 273, 278 (5th Cir. 2014) (per curiam) (unpublished).

[18] *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 333 (5th Cir. 2005).

[19] *See Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002) (citing *Evans v. City of Hous.*, 246 F.3d 344, 355 (5th Cir. 2001)); *see also Ogden v. Brennan*, 657 F. App'x 232, 236 (5th Cir. 2016) (per curiam) (unpublished) (citing *Sandstad*, 309 F.3d at 899).

ignoring alarms, having difficulty intubating a patient, and speaking with the family of the patient who was difficult to intubate. Additionally, he admits that Hospital employees investigated the November 2017 incident and asked him about his communication with the patient's family. That the Hospital was sufficiently concerned with the event that it conducted an investigation weighs against a finding of pretext. Finally, the fact that the hospital received no written complaints about Cromwell does not undermine the deficiencies in his performance observed directly by hospital employees, and the district court correctly stated that Cromwell's testimony that some employees did not have a problem with his work "did not negate the testimony of those that did."

To connect his termination to his disabilities, Cromwell provides evidence of disability-related comments made by Dr. Brand and Williams. Dr. Brand testified regarding his conversations with Chandler: "Really, as best I can recall, the first conversations were more about just [Cromwell's] walking and the difficulty hearing and the perception. It was just about the perception that the patients would have. . . . [I]nitially it was pretty, you know, limited to just those concerns and how can we make it better." Cromwell admits in his reply brief that these comments occurred two years prior to his termination. Thus, this comment is insufficient to show pretext.[20] Similarly, that Williams described Cromwell's admitted disability

---

[20] *See, e.g.*, *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 222 (5th Cir. 2001) ("Where comments are vague and remote in time they are insufficient to establish discrimination." (internal brackets, internal quotation marks, and citation omitted)); *Nguyen v. Univ. of Tex. Sch. of L.*, 542 F. App'x 320, 325 (5th Cir. 2013) (per curiam) (unpublished) (finding statements made over a year before discharge to be too remote to raise a fact issue).

to Chandler does not show pretext, especially where the conversation occurred multiple years prior to Cromwell's termination.[21]

Additionally, the Hospital knew of Cromwell's disabilities by 2015 but did not terminate his employment until early 2018. The timing of his termination does not indicate pretext because (1) for multiple years, the Hospital accommodated his disabilities and (2) the termination occurred two months after the November 2017 incident.[22]

On appeal, Cromwell also argues that there is evidence of pretext because Dr. Singh did not mention the November 2017 incident explicitly in his deposition and because Williams and Dr. Brand are "interested witnesses." However, he did not raise these arguments for pretext in the district court. We therefore do not consider them here.[23]

Considered individually and collectively, Cromwell's evidence properly before this court does not show that the Hospital's articulated nondiscriminatory reasons for Cromwell's termination were merely pretextual. Accordingly, we hold that the district court did not err in granting the Hospital's motion for summary judgment and dismissing Cromwell's claims under the Rehabilitation Act.

---

[21] *See Wallace*, 271 F.3d at 222; *Nguyen*, 542 F. App'x at 325.

[22] *See Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 240 (5th Cir. 2015) ("Timing standing alone is not sufficient absent other evidence of pretext." (quoting *Boyd v. State Farm Ins. Cos.*, 158 F.3d 326, 330 (5th Cir. 1998))); *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 354 (5th Cir. 2014) (finding possible inference of pretext due to temporal proximity of protected conduct negated by even greater temporal proximity to inappropriate, nonprotected conduct).

[23] *See Grogan v. Kumar*, 873 F.3d 273, 277 (5th Cir. 2017).

No. 22-60109

\*      \*      \*

The judgment of the district court is AFFIRMED.